John L. Nolen and Jewel E. Nolen v. Commissioner.
Nolen v. Commissioner
Docket No. 740-63.
United States Tax Court
T.C. Memo 1964-99; 1964 Tax Ct. Memo LEXIS 235; 23 T.C.M. (CCH) 595; T.C.M. (RIA) 64099; April 17, 1964
Lawrence F. Terry, for the petitioners. Leo McLaughlin, for the respondent. RAUM
Memorandum Findings of Fact and Opinion Respondent determined the following deficiencies in income taxes of petitioners: Taxable Year
Deficiency
1958
$293.04
1959
293.04
1960
300.98
The principal issue is whether the rental value of a second floor apartment, which an employee of a doctor was required to occupy, is excludable from her gross income under the provisions of Section 119(2) of the Internal Revenue Code *236 of 1954. Findings of Fact Some of the facts are stipulated, and, as stipulated, are incorporated herein by reference. Petitioners, husband and wife, are residents of San Jose, California. John L. Nolen is involved in this proceeding only because he filed a joint income tax return with his wife for each of the taxable years with the director of internal revenue for the district of San Francisco, California. Jewel E. Nolen will hereinafter be referred to as the petitioner. At all times material herein John L. Garrett, M. D., owned a two-story building at 1121 Willow Street, San Jose, California. He had his office on the first floor of this building, and for approximately 15 years he and his family lived on the second floor in an apartment consisting of two bedrooms, living room, kitchen, dinette and bathroom. Because of an increase in the size of his family he moved to a larger apartment. When he moved he left some rugs and draperies and a refrigerator and stove, all of which were old, in the apartment. On or about January 2, 1957, Dr. Garrett advertised for a receptionist to live on the premises at 1121 Willow Street. Although petitioner had never worked as a medical receptionist, *237 she answered the advertisement and was hired. Dr. Garrett required as a condition of employment that she occupy the second floor apartment above his office as a business convenience to him and his patients who frequently made phone calls regarding prescriptions, appointments, emergencies, etc. when the office was closed on Wednesdays, weekends, holidays and evenings. There was an extension to the office phone in the apartment and the bell rang in both places. At the time she was hired the doctor informed her that the maintenance of the office after normal working hours was part of her job, and that she would receive a salary of $50 per month and the use of the apartment and utilities. Early in 1957, she and her husband and son, who was then about three years old, moved into the apartment, and occupied it during the taxable years 1958, 1959 and 1960. During the taxable years petitioner was the only person employed by Dr. Garrett. In addition to the duties that a medical receptionist would normally perform during office hours, she was expected to render as part of her job, and did render, other services. These included a daily routine cleaning of the office when she came to work each *238 morning, preparing bank deposit and monthly statements, storing certain perishable medicine needed in the office in the refrigerator located in the apartment, and after office hours and on days when the office was closed, answering the office extension phone, collecting and burning paper and other trash, washing and ironing the doctor's dressing gowns, and periodically cleaning and waxing the floors, and washing the woodwork, venetian blinds, windows, and bathroom curtains. Many of the telephone calls received by her when the office was closed were from pharmacists asking for authorization to refill prescriptions which patients sought to have refilled at night. She had the doctor's permission to authorize the refilling of certain prescriptions and gave such authorizations in many instances. Sometimes the doctor would call and ask her to get certain information from the office files. Other calls came from patients. The office usually closed at 5:00 p.m. and between 5 and 6:30 she frequently received such a large number of calls that they interfered with her dinner preparations. Later in the evening she would also receive a few calls. Patients knew that she resided in the buildings and *239 sometimes would knock on her door if they wanted something. Residence in the apartment was required of her as a condition of employment and was necessary in order for her to perform properly the duties of her employment. During the years 1958, 1959 and 1960, Dr. Garrett had three telephone numbers listed in the San Jose telephone book at which he could be reached, his office phone number, his home phone number, and the telephone number of the Physicians' Exchange Telephone Answering Service, San Jose, California. There was no direct connection during those years between his home or office telephone number and the Physicians' Exchange, and it did not answer any calls made to his office or home. If he were going out of the city, he would phone the exchange and it would arrange for a doctor if one were needed by a patient during his absence. After petitioner left the employ of Dr. Garrett on August 1, 1963, he subscribed to an answering service. During the years petitioner was employed by Dr. Garrett she received some increases in salary. The cash salary received by her amounted to $1,020 in 1958, $1,260 in 1959, and $1,320 in 1960. She reported these amounts as salary received in *240 her returns for those years. She did not report the rental value of the apartment as income received in those years. Respondent determined that the fair rental value of the apartment was not less than $1,480 per year, and that this amount was includable in petitioners' gross income for the years 1958, 1959 and 1960 under the provisions of Section 61(a)(1) of the Internal Revenue Code of 1954 as compensation for services. Opinion RAUM, Judge: Petitioners contend that the rental value of the apartment was properly excluded from their gross income for the taxable years under Section 119(2) of the 1954 Code which provides for the exclusion from gross income of an employee of lodgings furnished by an employer for the convenience of the employer if the employee is required to accept such lodging on the business premises of the employer as a condition of his employment. A "receptionist" is defined in Webster's Third New International Dictionary to be "One who is employed in a business or professional establishment to greet and help visitors, business callers, or patients". Although petitioner was employed as a receptionist, the evidence discloses that at the time *241 of her employment she was informed that she would be expected to perform as part of her job many duties when the office was closed that are not normally performed by a receptionist, and that she actually did perform those duties. They have been incorporated in our findings. The evidence also discloses that the tests prescribed by Section 119(2), and applicable Treasury Regulations, [1] for the exclusion from gross income of the rental value of the apartment occupied by petitioner and her family during the taxable years have been met. The apartment was furnished by her employer on his business premises; its occupancy was required as a condition of her employment; it was furnished for his convenience in order that she might be accessible to answer business calls after hours from patients, pharmacists and her employer and to render certain services necessary for the maintenance of the office; and her occupancy of the apartment was necessary properly to discharge the duties she was employed to perform. In the circumstances, our conclusion is that she was entitled to exclude from gross income in each of the taxable years the rental value of the apartment, and that the respondent erred in *242 adding the rental value determined by him to the income reported by petitioners in their returns for those years. Decision will be entered for the petitioners. Footnotes
1. Section 1.119-1(b) of Income Tax Regulations under the 1954 Code provides: Lodging. The value of lodging furnished to an employee by his employer shall be excluded from the employee's gross income if three tests are met: (1) The lodging is furnished on the business premises of the employer, (2) the lodging is furnished for the convenience of the employer, and (3) the employee is required to accept such lodging as a condition of his employment. The phrase "required as a condition of his employment" means required in order for the employee to perform properly the duties of his employment. The exclusion shall apply irrespective of whether under an employment contract or a statute fixing the terms of employment such lodging is furnished as compensation.↩